**Virgil Lee JACKSON, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 19790.**

United States Court of Appeals,
Eighth Circuit.

April 7, 1970.

Virgil Jackson, pro se.

Daniel Bartlett, Jr., U. S. Atty., and James M. Gordon, Asst. U. S. Atty., St. Louis, Mo., on brief for appellee.

Before BLACKMUN, GIBSON and LAY, Circuit Judges.

LAY, Circuit Judge.

Petitioner, Virgil Lee Jackson, is presently confined in the Missouri State Penitentiary serving a ten-year sentence for second degree burglary. See State v. Jackson, 411 S.W.2d 129 (Mo.1967). On April 13, 1967, Jackson was convicted by a federal jury in the Eastern District of Missouri of concealing and retaining stolen United States postal money orders in violation of 18 U.S.C. § 641. He was given a three year sentence by the federal district court to run consecutively to the state sentence he was then serving. His conviction was affirmed *sub nom.* by this court on appeal. Feinstein v. United States, 390 F.2d 50 (8 Cir. 1968), cert. den. 392 U.S. 943, 88 S. Ct. 2327, 20 L.Ed.2d 1405 (1968). On January 27, 1969, Jackson filed a petition in the federal district court for a writ of habeas corpus under 28 U.S.C. § 2241 claiming his federal conviction and sentence was illegal, alleging *inter alia* an illegal arrest without probable cause and the use of illegally seized evidence. The district court, the Honorable John K. Regan, on March 12, 1969, entered an order dismissing the petition without prejudice. The district court treated Jackson's petition as a § 2255 motion[1] and held that the petition was premature since the petitioner was not yet in "custody" under the sentence he attacked. Jackson was denied leave to appeal *in forma pauperis.* Leave was granted by this court and the present appeal ensued. The sole issue is whether the federal district court was correct in dismissing Jackson's petition as premature since he was not in federal "custody" at the time he filed his motion. We conclude that under existing law the district court did have jurisdiction and we reverse and remand for further proceedings.

In Ramsey v. United States, 351 F.2d 31 (8 Cir. 1965), we held that a § 2255 post-conviction motion could not be filed where the petitioner was then serving a state sentence, because he had not yet begun to serve his federal sentence. Our decision turned upon the statement in Heflin v. United States, 358 U.S. 415, 418, 79 S.Ct. 451, 454, 3 L.Ed.2d 407 (1959), that "* * * § 2255 is available only to attack a sentence under which a prisoner is in custody."

Much water has passed under the bridge since *Heflin* was decided. First, it should be recognized that in *Heflin,* the Supreme Court was divided 5 to 4 on the question as to whether a prisoner could attack a sentence he was not presently serving. Four of the justices, including three members of the present Court,[2] felt that "A motion for such relief may be made at any time * * *." 358 U.S. at 418, 79 S.Ct. at 453. Mr. Justice Stewart wrote the majority view, in which Mr. Justice Harlan concurred along with Justices Frankfurter, Clark and Whittaker. The majority view was premised upon these two basic principles: (1) that the scope as to the rights under habeas corpus and § 2255 are the same, citing United States v. Hayman, 342 U.S. 205, 72 S.Ct. 263, 96 L.Ed. 232 (1952) and (2) that "custody" of a petitioner was required for a court to entertain a petition for a writ of habeas corpus under the mandate of McNally v.

---

1. Jackson had earlier been turned down, on December 4, 1968, on a similar § 2255 motion in the district court. The district court denied this petition as being premature, relying upon Ramsey v. United States, 351 F.2d 31 (8 Cir. 1965). No appeal was taken at that time.

2. Justices Douglas, Black and Brennan.

Hill, 293 U.S. 131, 55 S.Ct. 24, 79 L.Ed. 238 (1934).

The Supreme Court has recently emphasized that the scope of habeas corpus and § 2255 are intended to be the same.[3] However, in Peyton v. Rowe, 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968), involving the issue of "custody" under § 2241, McNally v. Hill, supra, was overruled. A unanimous Supreme Court spoke this significant language:

> "Clearly, to the extent that the rule of *McNally* postpones plenary consideration of issues by the district courts, it undermines the character of the writ of habeas corpus as the instrument for resolving fact issues not adequately developed in the original proceedings. * * *
>
> "*McNally* is also at odds with the purpose of the writ of habeas corpus in another respect. As noted above, a principal aim of the writ is to provide for swift judicial review of alleged unlawful restraints on liberty. Calendar congestion, considerations of federalism, see, e. g., Fay v. Noia, 372 U.S., at 415–420, 83 S.Ct. at 822; Ex parte Royall, 117 U.S. 241, [6 S.Ct. 734], 29 L.Ed. 868 (1886), and the exigencies of appellate review account for largely unavoidable delays in the processing of criminal cases. But the prematurity rule of *McNally* in many instances extends without practical justification the time a prisoner enti-

tled to release must remain in confinement. Rowe and Thacker eventually may establish that the convictions they challenge were obtained in violation of the Constitution. If they do, each day they are incarcerated under those convictions while their cases are in the courts will be time that they might properly have enjoyed as free men. Common sense dictates that prisoners seeking habeas corpus relief after exhausting state remedies should be able to do so at the earliest practicable time.

> " * * * Standing alone, the limitation of § 2241(c) (3)—that '[t]he writ of habeas corpus shall not extend to a prisoner unless * * * [h]e is in custody in violation of the Constitution'—is not free of ambiguity. However, in common understanding 'custody' comprehends respondents' status for the entire duration of their imprisonment. Practically speaking, Rowe is in custody for 50 years, or for the aggregate of his 30-and 20-year sentences. For purposes of parole eligibility, under Virginia law he is incarcerated for 50 years. Va.Code Ann. § 53–251 (1967); see n. 3, *supra*. Nothing on the face of § 2241 militates against an interpretation which views Rowe and Thacker as being 'in custody' under the aggregate of the consecutive sentences imposed on them. Under that interpretation, they are 'in custody in violation of the

---

3. Relying upon the exhaustive analysis of the legislative history of § 2255 by Chief Justice Vinson in United States v. Hayman, supra, the Supreme Court in Kaufman v. United States, 394 U.S. 217, 221–222, 89 S.Ct. 1068, 1071–1072, 22 L.Ed. 2d 227 (1969), observed:

> "Section 2255 revised the procedure by which federal prisoners are to seek such relief but did not in any respect cut back the scope of the writ. The section was included in the 1948 revision of the Judicial Code 'at the instance of the Judicial Conference [of the United States] to meet practical difficulties that had arisen in administering the habeas corpus jurisdiction of the federal courts. Nowhere in the history of Section 2255 do we find any pur-

pose to impinge upon prisoners' rights of collateral attack upon their convictions. On the contrary, the sole purpose was to minimize the difficulties encountered in habeas corpus hearings *by affording the same rights in another and more convenient forum,*' United States v. Hayman, 342 U.S. 205, 219, 72 S.Ct. 263, 272, 96 L.Ed. 232 (1952) (italics supplied); 'the legislation was intended simply to provide in the sentencing court a remedy exactly commensurate with that which had previously been available by habeas corpus in the court of the district where the prisoner was confined.' Hill v. United States, 368 U.S. 424, 427, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962)."

Constitution' if any consecutive sentence they are scheduled to serve was imposed as the result of a deprivation of constitutional rights. This approach to the statute is consistent with the canon of construction that remedial statutes should be liberally construed. It also eliminates the inconsistencies between purpose and practice which flow from the *McNally* holding. Meaningful factual hearings on alleged constitutional deprivations can be conducted before memories and records grow stale, and at least one class of prisoners will have the opportunity to challenge defective convictions and obtain relief without having to spend unwarranted months or years in prison." 391 U.S. at 63–65, 88 S.Ct. at 1554–1555.

See also Carafas v. LaVallee, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968); Walker v. Wainwright, 390 U. S. 335, 88 S.Ct. 962, 19 L.Ed.2d 1215 (1968); Jones v. Cunningham, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963).

Since Peyton v. Rowe, supra, courts of appeals have consistently interpreted the "custody" language of § 2255 within the same context of the new scope and meaning given to the writ of habeas corpus by that decision. See Crow v. United States, 397 F.2d 284 (10 Cir. 1968); Rosa v. United States, 397 F.2d 401 (5 Cir. 1968); Desmond v. United States Board of Parole, 397 F.2d 386 (1 Cir. 1968), cert. den. 393 U.S. 919, 89 S.Ct. 249, 21 L.Ed.2d 206 (1968). See also Orfield, Motion to Vacate Under 28 U. S.C. § 2255 (Part I), 2 Creighton L.Rev. 5, 19 n. 99 (1968). The First Circuit in *Desmond* said:

"It does not seem to us a significant stretch to say that he may attack a federal sentence, yet to be served, while defendant is in custody completing a state sentence. The same principles which dictated Peyton v. Rowe seem to us to support jurisdiction here. To be sure, defendant is not physically 'in custody under sentence of a court established by Act of Congress', but if custody is to be construed as single and continuous, we may join the courts as well. There is just as much reason to resolve the legality of resumed incarceration under an existing sentence before such resumption occurs as to resolve the legality of continued incarceration under a consecutive sentence yet to commence." 397 F.2d at 389.

See also United States v. Flanagan, 305 F.Supp. 325, 327 (E.D.Va.1969).

As *Hayman* and *Kaufman* make clear, the sole purpose of Section 2255 was "to minimize the difficulties encountered in habeas corpus hearings by affording the same rights in another and more convenient forum." 342 U.S. 205, at 219, 72 S.Ct. 263 at 272. "Custody" under Peyton v. Rowe, supra, relates to a petitioner's "status for the entire duration of [his] imprisonment." Under these circumstances, we think the petitioner, a state prisoner, may challenge his federal sentence although he has not yet commenced to serve that sentence. Ramsey v. United States, supra, is no longer to be followed in this circuit.

Judgment reversed and remanded for further proceedings by the district court.